UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CALEB BREAUX | CIVIL ACTION |
| VERSUS | NO: 22-00275 |
| BP EXPLORATION & PRODUCTION, INC., et al. | SECTION: T (1) |

**ORDER and REASONS**

Before the Court is a Motion to Stay filed by Plaintiff, Caleb Breaux.[1] Defendants, BP Exploration & Production, Inc., and BP America Company, have filed an opposition.[2] Also before the Court is a Motion for Summary Judgment filed by Defendants.[3] Plaintiff has filed a response in opposition.[4] Defendants have filed a reply in support of their Motion.[5] The main issue in this case is whether Plaintiff has had adequate time in which to obtain relevant expert causation evidence, because at this point in the litigation Plaintiff has yet to produce or identify written expert reports sufficient to carry his burden of proof at trial. For the reasons set forth below, the Court will deny Plaintiff's Motion to Stay and grant Defendants' Motion for Summary Judgment, dismissing all of Plaintiff's claims with prejudice.

---

[1] R. Doc. 60.
[2] R. Doc. 62.
[3] R. Doc. 64.
[4] R. Doc. 65.
[5] R. Doc. 67.

BACKGROUND

Plaintiff brought this action pursuant to the Back End Litigation Option ("BELO") of the Deepwater Horizon Medical Benefits Class Action Settlement Agreement ("MSA") entered in the Deepwater Horizon Oil Spill Litigation, MDL 2179.[6] Plaintiff, who was employed as a "clean-up worker" following the spill,[7] filed suit in February 2022 alleging "chronic exposure-related injuries" related to his work on the spill.[8] According to the complaint, those injuries include Follicular Lymphoma Grade 1-2, Follicular Pattern as diagnosed in 2020.[9]

The first Scheduling Order was issued on July 6, 2022.[10] That scheduling order set forth deadlines and important dates, including the deadline for Plaintiff's written expert reports and expert disclosures, which were due no later than December 22, 2022. Plaintiff filed a Motion to Modify and/or Extend Deadlines on December 5, 2022, seeking a 90-day extension for "all unexpired deadlines" in the Case Management Order.[11] This Court on September 22, 2023, granted that motion, among other things, and extended Plaintiff's expert report deadline from December

---

[6] This suit was brought pursuant to the Deepwater Horizon Medical Benefits Class Action Settlement Agreement. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, Case No. 2:10-md-2179, Order and Reasons, Rec. Doc. 8217 (E.D. La. Jan. 11, 2013). The MSA can be found in the record of MDL-2179 at C.A. No. 10-md-2179, at R. Doc. No. 6427-1.
[7] R. Doc. 1.
[8] R. Doc. 18-1.
[9] R. Doc. 1.
[10] R. Doc. 9.
[11] R. Doc. 18.

2

22, 2022, to October 13, 2023.[12] Thus, Plaintiff was effectively granted nearly a ten-month extension of his expert report deadline, substantially more than the ninety days he had requested. Given the extension of the deadline, the Order also dismissed as moot Defendant's first Motion for Summary Judgment, which was premised on the ground that Plaintiff had not designated an expert on causation.[13]

Plaintiff did not, however, then designate a causation expert. Instead, he filed an Emergency Motion to Stay citing his medical condition and seeking a status conference in 120 days to determine whether his condition had improved sufficiently for him to participate meaningfully in the litigation.[14] He contended he had developed lymphoma and had undergone chemotherapy and immunotherapy and had suffered other conditions during the spring and summer of 2023. In the fall of 2023, he was deemed to have only a 50% capacity, requiring substantial assistance. He stated that he had suffered respiratory failure and he was at that time on a waiting list for a lung transplant.[15]

Before ruling on that Emergency Motion for Stay, the Court requested a joint status report

---

[12] R. Doc. 45.
[13] *Id.*
[14] R. Doc. 47-1.
[15] R. Doc. 47-1, 7. In the Motion for Stay, Plaintiff also asserted his experts require him to be actively involved in his suit, have conference calls with them, and be examined by a psychologist. He contended he had not been able either to communicate well with counsel or to participate in the preparation of complex expert reports, which are vital to proving his case. Plaintiff also stated he had retained several experts and would be proffering an expert report on his case with evidence of required medical support. To the Court's knowledge, he has not, however, proffered such a report.

from the parties, which was filed in April 2024.[16] In that report, Plaintiff again requested a stay of the expert report deadline sufficient to allow him to recover and participate meaningfully in the litigation.[17] He requested that he be allowed to submit a status report in sixty days advising the Court of his health status. However, no such status report was ever offered by Plaintiff. As to discovery related to expert report deadlines, Plaintiff pointed to negotiations with third parties and non-parties,[18] as well as other umbrella judicial discovery.[19]

The Court on September 23, 2024, denied that Emergency Motion for Stay, noting that it had essentially granted Plaintiff his requested stay of the deadline for expert reports.[20] Nevertheless, the Court went on to grant another continuance of all deadlines and issue a new Scheduling Order, allowing Plaintiff another opportunity to designate his experts and produce expert reports.[21] The new Scheduling Order allowed Plaintiff until November 14, 2024, to file his written expert reports.[22] Effectively, then, Plaintiff's deadline for written expert reports was extended from the initial deadline of December 22, 2022, to November 14, 2024.

However, once again, rather than produce any expert reports, Plaintiff filed the instant Motion to Stay on November 8, 2024.[23] Plaintiff seeks yet another stay of 120 to 150 days,

---

[16] R. Doc. 54.
[17] R. Doc. 54.
[18] R. Doc. 54, pp. 4-7.
[19] *Id.*, pp. 7-8.
[20] R. Doc. 55.
[21] *Id.*
[22] R. Doc. 59, p. 3.
[23] R. Doc. 60.

asserting he has five new Later Manifested Physical Conditions ("LMPC") that he claims resulted from his exposure to oil and/or oil-based dispersants during the time he worked as a cleanup worker for the Deepwater Horizon Oil Spill.[24] Plaintiff wants to file suit and then consolidate these new allegations into his existing lawsuit.[25]

### A. APPLICABLE LAW REGARDING THE MOTION FOR STAY

Rule 16(b) provides that a scheduling order, once entered, "may be modified for only good cause and with the judge's consent."[26] To meet the good cause standard, the moving party must show that despite the diligence of the party requesting the extension, the current deadlines cannot reasonably be met.[27] Fifth Circuit jurisprudence instructs district courts to consider four factors in exercising their "broad discretion to preserve the integrity and purpose of the pretrial order."[28] Those four factors are: (1) the explanation for the requested extension; (2) the importance of the discovery; (3) potential prejudice in allowing the extension; and (4) the availability of a continuance to cure such prejudice.[29] In consideration of motions for extension, a Court's "judgment range is exceedingly wide" as it "must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's."[30]

---

[24] R. Doc. 60-1, p. 1.
[25] *Id.*
[26] Fed. R. Civ. Pro. 16(b).
[27] *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003) (internal citations omitted).
[28] *Id*. at 535-56. (internal citations omitted).
[29] *Id*. at 536.
[30] *Mejia v. Brothers Petroleum, LLC*, 2015 WL 5254696, at *4 (E.D, La. Sept. 9, 2015) (Vance,

A district court has wide discretion to stay a pending matter to control its docket and promote the interests of justice.[31] In considering whether to grant a stay, the Court weighs several "'competing interests which will be affected by the granting or refusal to grant a stay.'"[32] These competing interests include the following: (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay"; (2) "the possible damage which may result from the granting of a stay"; and (3) "the hardship or inequity which a party may suffer in being required to go forward."[33] The decision to grant or deny a stay is a matter of judgment and is reviewed by the Court of Appeals for abuse of discretion.[34]

### B. ARGUMENT AND ANALYSIS ON THE MOTION FOR STAY

Defendants point out that Plaintiff admits the medical conditions forming the basis of his motion to stay were all identified by September 2023.[35] Defendants argue that Plaintiff knew about these conditions for over a year but did not file suit during that time and he gives no reason for his failure to do so. Defendants further argue these conditions are neither new nor independent claims,

---

J.).
[31] *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)
[32] *Treece v. Perrier Condominium Owners Association, Inc.*, 2020 WL 759567 * 22 (E.D. La. Feb. 14, 2020.
[33] *Id.*
[34] *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 784 (5th Cir. 1997).
[35] "(Acute Interstitial Pneumonitis identified on June 05, 2020; Acute Hypoxemic Respiratory Failure and Acute Interstitial Pneumonitis, likely from Immunotherapy both identified on June 06, 2023; Drug Induced Pneumonitis Secondary to ICI and Chronic Respiratory Failure with Hypoxia both identified on September 05, 2023)." R. Doc. 60 at 1.

because Plaintiff states the conditions are related to his immunotherapy, which he received as treatment for his LMPC, lymphoma, as well as his Covid-19 diagnosis in 2023.[36] Defendants further argue that these conditions were previously the basis of Plaintiff's Emergency Motion to Stay, which was denied. Defendants argue that the latest Motion to Stay is simply an attempt to circumvent the Court's caution in its order of September 23, 2024, against any further extensions of any deadlines in the Scheduling Order without providing a showing of good cause.[37] Defendants also assert that a stay at this juncture would result in unfair prejudice. Defendants argue that the conditions cited by Plaintiff have been known to him since September 2023, but he missed two expert report deadlines without reason or justification. Defendants contend that granting a stay adds to its costs of defending the case and unjustifiably delays a timely resolution.

The Court, both indirectly and directly, has allowed Plaintiff significant time--an additional 23 months from the initial deadline--and multiple opportunities over the course of the litigation to produce written expert reports to prove his claims. The Court's Scheduling Order is intended to provide for the swift and efficient administration of justice and should not be modified to allow a continuance without good cause shown.[38] The Court has not been unmindful of Plaintiff's medical condition. However, the Court agrees with Defendants that the allegedly new conditions appear to have been known to Plaintiff and his counsel since at least September 2023, and thus he has had

---

[36] R. Doc. 60-1.
[37] *See* R. Doc. 55, p. 5.
[38] *Bice v. BP Expl. & Prod., Inc.*, No. 14-cv-1155, 2022 WL 17844616 *4 (E.D. La. Dec. 22, 2022).

sufficient time in which to assert such claims, assuming they even differ from his previously-asserted claims. At any rate, there has been no reasonable showing that additional discovery will benefit Plaintiff in any measurable way, except to delay the litigation. It is within the Court's wide discretion to modify any deadlines in its scheduling orders. Not having found, under the facts and circumstances of this litigation, good cause to continue this matter any longer, the Court will deny Plaintiff's Motion to Stay.[39]

### C. **APPLICABLE LAW ON SUMMARY JUDGMENT**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court must find "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and all reasonable inferences are drawn in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.

---

[39] *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

After the movant meets his burden, the burden shifts to the non-movant to show the existence of a genuine issue for trial. *Gernain v. U.S. Bank Nat' Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019). In doing so, the non-movant must submit "significant probative evidence" in support of his claim. *State Farm Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008). However, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).

### D. ARGUMENT AND ANALYSIS ON SUMMARY JUDGMENT

The BP Settlement Agreement resolved damages claims for certain individuals exposed to harmful chemicals because of the oil spill. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 10-2179, 2016 WL 4091416, at *4 (E.D. La. Aug 2, 2016); *see also, e.g., Banegas v. BP Expl. & Prod.*, No. 17-cv-7429, 2019 WL 424683 (E.D. La. Feb. 4, 2019). Class members who did not opt out of the agreement surrendered most of their rights to sue BP in return for defined compensation benefits. *See Piacun v. BP Exploration & Prod., Inc.*, No. 15-2963, 2016 WL 7187946, at *3 (E.D. La. Dec. 12, 2016). An exception to this rule applies when a class member's injury caused by his exposure to harmful chemicals is first diagnosed after April

16, 2012. *Id.* If certain preconditions are met, class members suffering from these "Later-Manifested Physical Conditions" (LMPCs) are permitted to file suit against BP in federal court as part of the Settlement Agreement's "Back-End Litigation Option" (BELO). *Id.* at *4.

As noted above, Plaintiff has asserted a BELO claim against Defendants arising from his alleged exposure to toxic chemicals. To succeed on this claim, he must prove, *inter alia*, (1) that he was correctly diagnosed with his alleged physical condition after April 16, 2012, and (2) that his LMPC was legally caused by his exposure to harmful substances released as a result of the oil spill. *Id.* at *4-5.

It is well-settled that in a toxic torts case, the plaintiff must rely on expert testimony to prove his or her medical diagnosis and causation. *See Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 723 (5th Cir. 2009) (noting that expert testimony is required to establish causation); *United States v. Crinel*, No. 15-61, 2016 WL 6441249, at *7 (E.D. La. Nov. 1, 2016) ("[A]n opinion regarding a patient's medical diagnoses or prognoses 'falls within the scope of expert testimony under [Federal Rule of Evidence] 702'") (quoting *Barnes v. BTN, Inc.*, 2013 WL 1194753, at *2 (S.D. Miss. Mar. 22, 2013), *aff'd*, 555 F. App'x 281 (5th Cir. 2014)).

Here, Plaintiff does not assert that he has retained an expert to provide testimony at trial related to his medical diagnosis or causation. *See* Fed. R. Civ. P. 26(a)(2)(B). Nor does he assert he will present expert testimony from a non-retained treating physician. *See id.* 26(a)(2)(C). Instead, he argues that he has moved for and is entitled to a stay to allow him to assert his newly-diagnosed LMPCs and thus Defendants' motion for summary judgment should be dismissed as

moot.[40] He contends that his additional LMPCs were diagnosed in June 2023 and that he filed under the MSA his new Notice of Intent to Sue ("NOIS") on October 28, 2024, before the November 14, 2024 deadline to produce written expert reports. [41] Plaintiff also argues the motion for summary judgment is premature because there has been no decision on the newly-filed NOIS by the claims administrator and, thus, there is no indication whether Defendants will choose to mediate the claims or not. Plaintiff contends he will not be able to "present all the facts essential to justify his position at this specific time without additional opportunity to bring all claims under one complaint."[42] Finally, he argues there is no prejudice to Defendants because they need not retain any new experts or conduct any additional work and they will be able to refile their motion for summary judgment.[43]

But this Court has already decided not to continue this matter any further.[44] In any case, Plaintiff again fails to explain why he did not file the NOIS with regard to the allegedly-new LMPC claims when he learned about them in June 2023, or even as late as September 2023, but instead waited until the eve of the deadline in the Scheduling Order to produce written expert reports before filing his NOIS with the Claims Administrator. Consequently, the bases for both the motion to stay and his opposition to the motion for summary judgment appear to be dilatory. Without

---

[40] R. Doc. 65, p. 8.
[41] *Id.*, pp. 8-9.
[42] *Id.*, p. 9.
[43] *Id.*
[44] *See supra*.

11

expert witness evidence, Plaintiff cannot meet his burden of proving that his condition was legally caused by his exposure to harmful substances released as a result of the oil spill.[45] Consequently, Defendants are entitled to summary judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Stay (R. Doc. 60) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE. The Court will enter judgment in favor of Defendants.

New Orleans, Louisiana, this 31st day of March 2025.

_____
GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[45] *Banegas*, 2019 WL 424683 at *2-3.